EDGELEY CO-OPERATIVE GRAIN COMPANY, a corporation
Respondent, v. H. SPITZER, Appellant.

(184 N. W. 880.)

**Gaming — in action on note defended as having been given in gambling, evi‑
dence held to show loss was in "hedging" transaction.**

1. In an action brought to recover on a promissory note in the sum
of $4,000.00, the defense of no consideration was pleaded and relied upon.
In that connection it was claimed the note was given for losses sustained
in a gambling transaction to wit: the buying and selling of grain options.
The evidence shows that the loss was occasioned by what is termed a
"hedging" transaction, conducted by The Pomona Valley Farmers' Elevator
Company, (of which the plaintiff is the successor and now the owner of
the note) for the defendant and at his request.

**Gaming — where evidence showed note was not for grain gambling, directing
verdict for plaintiff held not error.**

2. At the close of the testimony the court directed a verdict in
plaintiff's favor and it is held for reasons stated in the opinion that in this
there was no error.

**Appeal and error — where plaintiff consents to modification of judgment cor‑
recting error, it will be so modified.**

3. Defendant claims there is conflicting testimony with reference to
the proper application of a certain sum of money, in amount $1,710.00,
which he claims he ordered to be applied on the note. The judgment has
been directed to be modified, plaintiff having consented, so that any benefit
he would have received if the money had been applied on the note, instead
of otherwise, viz: on an account, is secured to him and a new trial is
therefore unnecessary. For reasons stated in the opinion, nothing would
be gained by a new trial.

Opinion filed Oct. 17, 1921.

Appeal from the District Court of LaMoure County, *Graham,* J.

Judgment modified and affirmed.

*John W. Carr,* for appellant:

"The essence of a gambling transaction is that the particular trans-

action shall contemplate no delivery, without reference to the making of any other deal." John Miller Co. v. Klonstad, 105 N. W. 164.

It is also well settled that where the principal cannot recover because of the gambling nature of the transaction, neither can the agent recover. Dows v. Glaspell 60 N. W. 60.

"Transactions for the sale and delivery of grain or other commodities to be delivered at a future day are not per se unlawful, where the parties in good faith intend to perform them according to their terms. But contracts in form for future delivery, not intended to represent actual transaction, but merely to pay and receive the difference between the agreed price and the market price at a future day, are in the nature of wagers on the future price of the commodity and void." Mohr et al v. Miesen (Minn.) 49 N. W. 862.

The fact that a note had been given by the defendant to cover the loss or a portion of the loss on the gambling transactions does not change the rule so as to preclude him from setting up as a defense the fact that the consideration for the note was represented by losses on the various gambling transactions." Embrey v. Jemison, 131 U. S. 338; 9 Sup. Ct. Rep. 776; Dows v. Glaspell, 60 N. W. 60 (N. D.).

The question of whether the creditor applied a payment otherwise than as directed by the debtor is one for the jury. Root v. Kelly, 39 Misc. (N. Y.) 530; 80 N. Y. Supp. 482.

"Generally the question of application of payments by the parties as determined by their intention is one of fact for the jury." 30 Cyc. 1296.

*Hutchinson & Lynch,* for respondent.

The court is justified in directing a verdict where the evidence is undisputed or of such conclusive character or so preponderates in favor of the plaintiff that the court in the exercise of sound judicial discretion would be compelled to set aside a verdict in opposition to it. 38 Cyc. 1567 to 1571.

The court did not err in directing a verdict for the plaintiff on all the issues of the case. Buchanan Elevator Co. v. Lees, 37 N. D. 27; The John Miller Co. v. Klovstad, 14 N. D. 435; 105 N. W. 164; Bibb v. Allen 149 U. S. 481; 13 Sup. Ct. 950; 37 L. ed. 819; Clews v. Jamieson, 182 U. S. 461; 21 Sup. Ct. 845; 45 L. ed. 1183; Chicago Board of Trade v. Christie G. & S. Co., 198 U. S. 236; 49 L. ed. 1031; Van Duzen Harrington Co. v. Jungeblut, (Minn.) 77 N. W. 970; Wall v. Schneider

(Wis.) 18 N. W. 443; Hill v. Levy, (D. C.) 98 Fed. 94; Parker v. Moore, (C. C. A.) 125 Fed. 807; Ponder v. Jerome Hill Cotton Co. 100 Fed. 373; 40 C. C. A. 416.

The contracts were in accordance with the customs and usage of the Minneapolis Chamber of Commerce and there was no evidence that delivery could not be legally exacted in any of the transactions involved. Barnes v. Smith, 159 Mass. 344; 34 N. E. 403; Board of Trade v. Kinney, et al 130 Fed. 507; 64 C. C. A. 669; The John Miller Co. v. Klovstad, supra; Board of Trade v. Christie, supra.

The rules and regulations of the Minneapolis Chamber of Commerce are not in conflict with the Minnesota statute with reference to bucket shop. John Miller Co. v. Klovstad, supra; Sampson v. Camperdown Cotton Mills 82 Fed. 833.

The functions of the Minneapolis Chamber of Commerce and all other such exchanges are necessary and they are created by law and sanctioned by the courts of the land. John Miller Co. v. Klovstad, supra; Bibb v. Allen, supra; State v. Duluth Board of Trade, et al (Minn.) 23 L. R. A. (N. S.) 1260; Clews v. Jamieson, supra; Chicago Board of Trade v. Christie G. & S. Co. supra.

Contracts for the future delivery of merchandise of tangible property are not void whether such property is in existence in the hands of the seller or to be subsequently acquired. John Miller Co. v. Klovstad, supra; Bibb v. Allen, supra.

It is well settled that the burden of proof is upon the defendant to prove that the contracts were illegal. The law presumes that they are ligitimate transactions. John Miller Co. v. Klovstad, supra; Chicago Board of Trade v. Christie, G. & S. Co. supra; Clews v. Jamieson, supra; Bibb v. Allen, supra.

GRACE, C. J. This is an action to recover on a promissory note in the sum of $4,000, with interest thereon from the 20th day of April, 1917, to date of maturity, at the rate of 7 per cent. per annum until due, and 10 per cent. per annum thereafter. The issues of fact were presented to a jury.

At the close of the testimony the court directed a verdict in plaintiff's favor for the amount of the note and interest. Judgment was entered on the verdict, and this appeal is from the judgment.

The complaint states a cause of action in the ordinary form on a promissory note. The answer admits the execution and delivery of the

note to the payee. It denies that it was executed or delivered for value received or any legal consideration, and further denies any indebtedness to the plaintiff in any sum whatsoever. In the answer it is further alleged that the sole and only consideration for the execution and delivery of said note by defendant was in substance as follows: That during the months of March and April, 1917, and subsequently thereto, this defendant, acting through the said Pomona Valley Farmers' Elevator Company, as his agent, engaged in the purchase and sale of grain options and in gambling and speculating upon the prices of grain upon various boards of trade, selected by said Pomona Valley Farmers' Elevator Company, and during said periods this defendant, acting through said Pomona Valley Farmers' Elevator Company, as his agent, bought and sold grain options, solely as gambling and speculative operations, it being at all times fully understood by the said Pomona Valley Farmers' Elevator Company, by this defendant, and by all others connected with said transactions, that said transactions were purely and solely gambling and speculative operations; and it was never understood by said Pomona Valley Farmers' Elevator Company, or by this defendant, or by any one else connected therewith, that any actual grain was to be bought or sold, received or delivered by defendant. And defendant alleges that neither this defendant nor Pomona Valley Farmers' Elevator Company, nor any other party connected with the transaction mentioned above, actually intended that there should be any actual transfer, delivery, or receipt of the commodities covered by said options.

The answer is of too great length to be set out in full. The principal defense set forth in the answer is that the entire transaction with reference to the sale and purchase of 10,000 bushels of rye, the facts in reference to which will hereafter be set forth, was one of speculation and gambling. The defendant pleads a counterclaim in the sum of $1,800, the alleged value of the number of bushels of rye delivered by him to the Pomona Valley Farmers' Elevator Company in the fall of 1917, and further claims that it agreed to give credit on the note for that amount which it failed to do. A reply was interposed to the answer averring payment to defendant of the amount of the actual rye delivered in the fall of 1917.

The material facts in the case are substantially as follows: The price of rye in March, 1917, was about $1.49 per bushel. At that time Ernest Steel was the agent of the Pomona Valley Farmers' Elevator Company

at Edgeley, N. D. During the month of March, and until April 20, 1917, the Pomona Valley Farmers' Elevator Company sold in the manner hereinafter described for defendant 10,000 bushels of rye at the market price of about $1.49 per bushel. Between the time when defendant had through the said Elevator Company sold the rye and the 20th day of April, 1917, rye on the market had advanced in price to such an extent that a loss of about $4,000 had occurred on the transaction, and at that time for this amount the note in suit was taken. After the giving of the note, rye still continued to advance. The defendant in the month of July, 1917, through the Elevator Company, purchased 10,000 bushels of rye at $2.05 per bushel. The loss on the entire transaction up to the time of the purchase last mentioned was approximately $5,505.

The defendant owns and operates a farm of about 1,000 acres in the vicinity of Edgeley. He also owns about 1,000 acres of land in Canada. Formerly he was engaged in the real estate business and had also seven years experience as a grain buyer. He was a stockholder in the Pomona Valley Farmers' Elevator Company which was later reorganized into the Edgeley Co-operative Grain Company, now the owner and holder of the note in suit.

In the fall of 1916, he sowed 800 acres of winter rye on his La Moure county, North Dakota, farm. In the spring of 1917 he endeavored to contract with the Pomona Valley Farmers' Elevator Company his prospective rye crop, which he estimated at about 12,000 bushels. Steel, the agent of the said Elevator Company, stated that he could not at that time contract to buy the rye, but that it might be handled as a "hedge."

The defendant desired to sell September rye. There was then no dealings in September rye, and the commission firm informed said Elevator Company to this effect. Steel again took the matter up with the commission firm and they finally suggested that what is termed a trial sale for July might be undertaken, and, if that went through, the sale could be later transferred to September when defendant could make actual delivery of the rye. Steel informed the defendant of this and such a sale was made at $1.49 per bushel. At this time he authorized the sale of 1,000 bushels, later of 4,000, and later still of 5,000 bushels, and sales thus authorized were made.

In the fall of 1917, the defendant delivered to the Pomona Valley Farmers' Elevator Company approximately 2,513 bushels of rye. On the 20th day of October, 1917, this was sold at $1.67 per bushel, amount-

ing to a total of $4,196.85. Prior to the time the defendant delivered to the Elevator Company the above-mentioned number of bushels of actual rye, he agreed with it that it should pay him $1 per bushel for each bushel of rye hauled to the elevator, as he claimed it was necessary for him to have this amount to pay the threshing expense, etc., the balance of the selling price of the rye so delivered to be applied on the loss to which reference has heretofore been made. The Elevator Company did make certain advances to the defendant, which with interest, together with a note to the Nortonville Bank of $150, aggregated $2,486.85. This amount, deducted from the $4,196.85, the selling price of the actual rye, left remaining $1,710, $1,505 of which was indorsed by the Elevator Company on the loss account which had occurred from the time of the execution and delivery of the note of $4,000 until the transaction was finally closed in July by the purchasing on the market of the 10,000 bushels. The remaining $205 was indorsed by the Elevator Company on the note.

The defendant's testimony in substance is that he directed the $1,710 to be applied upon the $4,000 note, while Steel testified in substance that it was to be applied first upon the loss account due to the rye transaction, and the balance on the note. The defendant testified in substance that he gave the plaintiff no direction to apply any of the money on the loss account, and that he knew of no charge or account against him except that represented by the note.

Defendant attempts to show that the loss at the date of execution and delivery of the note was $3,000, while the testimony of Steel is that the losses equaled the amount of the note. The testimony of each shows that the total loss was $5,505, $25 of which was commission charged by the Tenney Company.

The testimony of the defendant is to the effect that the whole rye transaction except where the actual rye was delivered was a speculation. It will serve no useful purpose to set forth any of the evidence in detail. There is only one assignment of error, which may be divided into two important contentions:

(1) That the court erred in granting plaintiff's motion for a directed verdict made at the close of the trial, and in not submitting the issues to the jury.

(2) That there was a direct conflict in the evidence on a number of material issues, and for this reason it is claimed that the facts of the case

should have been submitted to the jury for determination. It is the defendant's contention that the entire transaction with reference to the 10,000 bushels of rye was purely a gambling transaction, and that for this reason there was no consideration for the note. His contention in this regard is entirely without merit. The testimony clearly shows that he expected that, if his rye crop was normal, he would have about 12,000 bushels. At the time of the transaction rye was about $1.49 per bushel. The defendant expected rye to be a lesser price in the fall, when the rye crop would be ready for sale; hence he desired to contract the sale of it. About the time the transaction took place, the Elevator Company declined to contract for purchase of the prospective crop of rye.

The Elevator Company would, however, undertake to handle the transaction as a "hedge." The term "hedge" is well understood in connection with transactions on the grain market, and that term needs no further elucidation. If the transaction could be handled as a hedge, it would result in procuring for the defendant a price for his prospective crop of rye, at the time of marketing thereof, of not less than the amount for which the 10,000 bushels were sold on the market by the Elevator Company for defendant. In other words, the 10,000 bushels would represent a sale of defendant's prospective crop of rye which was then in existence, but which had yet not matured. When consummated, the transaction would be what is denominated a "hedge."

The Elevator Company was at all times acting for the defendant in the hedging transactions. Defendant had the prospective crop of rye which, if normal, would exceed the number of bushels sold on the market for him by the Elevator Company, and which we think the record clearly shows was intended to be delivered to fulfill the contract of the sale of the 10,000 bushels above referred to. If this be true, and we think it is, the transaction was not a gambling one, but purely a hedging transaction, which is not unlawful, and does not partake of the nature of gambling. It is not difficult to perceive that defendant authorized the sale of the 10,000 bushels so that he would be assured of a good price for his crop of rye when it was ready to market, and that he expected to have more than that amount of actual rye at the maturity of his crop. He evidently expected that rye would be a great deal lower in price at marketing time than it was in March, the time of the transaction, and by selling the 10,000 bushels, and by being able to transfer the same on the market from July to September, the time would then have arrived when he could

deliver an amount of rye equal to that which he had sold, and if at the time of the delivery the market price of rye was only $.75 per bushel, it is not difficult to see that he would have gained about $.75 per bushel by the transaction. But, unfortunately for defendant, and contrary to his expectations, rye was not a lower price at the time he expected to market same, but continued to advance over the price for which he had sold the 10,000 bushels until it reached $2.05 per bushel, when defendant desired, no doubt, to terminate the loss, and procured the Elevator Company to purchase 10,000 bushels on the market, at which time his loss had reached $5,505. His prospective crop of rye did not materialize as he expected, and hence he could not deliver a sufficient number of bushels to cover the sale of the 10,000 bushels which he had made, and hence the only thing he could do to stop his loss was to buy rye in amount equivalent to the number of bushels which he sold. This he did.

It must also be noticed that the Elevator Company never received any benefit or profit from the transaction, and as the transaction was handled, there was no way in which it could make a profit on it. Certainly it is unbelievable that it would entail a great loss on itself without expectation or any possibility of profit to it. It is clear that it was handling the matter for the defendant as a "hedge," and not otherwise.

Other transactions of the defendant on the grain market which occurred prior to the one in question, and which are claimed to have been speculation, need no consideration here, as they have no bearing on the issues here involved.

As to defendant's second contention that there was a conflict of evidence on material issues which should have been submitted to a jury, it is only necessary to say that such conflict, if any, related only to the alleged direction of defendant to the Elevator Company relative to the application of a portion of the money received for the rye actually delivered to the Elevator Company. A certain amount of this money the Elevator Company applied upon defendant's account with it, and the balance upon the note as above stated. The defendant's contention is that he directed such money to be applied upon the note, and because the issues in this regard were not submitted to the jury, he contends there should be a new trial. Assuming, however, that the defendant is correct in his contention, and assuming further that this is the only relief a new trial would give defendant, and we think this assumption is true, we are clearly of the opinion that in the circumstances of this case, that would

not be sufficient reason for granting a new trial. Instead thereof, this court could, with consent of plaintiff, order the judgment modified so that the defendant would obtain benefit equal to that which he claims he would have received had the money been indorsed on the note instead of applied to the payment of the account.

The note bore 7 per cent. interest before and 10 per cent. after maturity. The account drew the legal rate of 6 per cent. per annum. And assuming, but not deciding, that defendant directed the $1,710, the balance of the price of rye sold to the Elevator Company, after deducting the amount it advanced him for expenses to which reference heretofore has been made, to be applied on the note, it is clear that he would be entitled only to a credit of the difference between the interest at the rate the note bore, and interest at the legal rate on the amount paid since the date of payment, and if the judgment is so modified there would be no issue remaining for a new trial. The plaintiff on oral argument consented that this modification might be made. Plainly, under the evidence the defendant is entitled to no other relief. The judgment is therefore directed to be modified as above indicated, and so modified it is affirmed. Respondent is entitled to his costs and disbursements on appeal.

BRONSON, BIRDZELL, and ROBINSON, JJ., concur.

CHRISTIANSON, J. (concurring). I agree with Mr. Chief Justice GRACE that the only question for the jury in this case was whether the defendant directed the plaintiff to apply the $1,710 upon the note. Upon all other issues of fact there was no conflict in the evidence, and no room for different conclusions to be drawn by reasonable men. Furthermore the evidence was such that it is manifest that there could be no different result upon another trial. In other words the disposition made of the case in the opinion prepared by the Chief Justice is the most favorable to the defendant that could possibly be made upon another trial. And upon the oral argument plaintiff's counsel stated that in event this court should hold that the question as to the proper application of the $1,710 was one for, and should not have been withdrawn from, the jury, that then the plaintiff, in order to terminate the litigation, would and did consent that the issue might be determined against it, and the judgment modified accordingly by this court. Hence I concur in the disposition made of this cause in the opinion written by the Chief Justice.